# JOSEPH & NORINSBERG, LLC

**225 Broadway Suite 2700**
**New York, NY 10007**
**Telephone (212) 227-5700**
**Fax (212) 406-6890**

_____

**www.employeejustice.com**

June 8, 2018

**VIA ECF**
Hon. Gary R. Brown, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    **Re: Pusey v. Day Accessibility & Mobility Solutions, Inc.**
       **17-cv-04122-JFB-GRB (E.D.N.Y.)**

Dear Judge Brown:

  This firm represents Plaintiffs Damien Pusey ("Mr. Pusey") and Tyler Nick ("Mr. Nick") (collectively "Plaintiffs") in the above-referenced wage-and-hour matter against Day Accessibility & Mobility Solutions, Inc. ("Defendant"). We write now, on behalf of all parties, to respectfully seek judicial approval of the Settlement Agreement, attached hereto as Exhibit 1.

## FACTUAL ALLEGATIONS

  On July 12, 2017, Plaintiff Damien Pusey commenced this action on behalf of himself and a putative Class against Defendant, alleging violations of, <u>inter alia</u>: (i) the overtime provisions of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"); and (ii) the prevailing wage requirements set forth in NYLL § 220, based on a third-party beneficiary claim arising in tort and contract.

  On September 29, 2017, Plaintiff filed an Amended Complaint, at which time Tyler Nick was joined as a Plaintiff and a Class Representative of the putative class.

  In the Amended Complaint, Plaintiffs alleged that during the course of their employment as elevator mechanics for the Defendant, they had been assigned to jobs for both private entities and for public works contracts. Plaintiffs alleged further that the Defendant frequently failed to pay them for all hours worked; specifically, they were not always paid for their lunch hours, and their respective travel time between jobs. Additionally, Plaintiffs claimed that the Defendant failed to pay them in conformity with the prevailing wage schedule, and the accompanying benefits, for all public works contracts.

  The Defendant submitted an answer in a timely manner, denying all material allegations.

HON. GARY R. BROWN U.S.M.J,
JUNE 8, 2018
PAGE 2

## PROCEDURAL HISTORY

On January 12, 2018, the parties appeared before this Court for an Initial Conference. At the Initial Conference, this Court highlighted the complexity of the allegations in this case, including the alleged prevailing wage claims, and suggested that the parties consider early settlement. The Court then ordered a 60-day period of initial pre-settlement discovery, during which time the Defendant was to produce all necessary discovery for computing damages, such as payroll records and time sheets for the two named Plaintiffs. Additionally, during this 60-day period, the parties were to explore settlement discussions.

In compliance with this Court's Order, the parties exchanged Rule 26 disclosures and produced documents. The Defendant produced: (i) daily site reports; (ii) field time sheets; and (iii) payroll records related to Plaintiffs' employment (close to 2000 pages, in total). Thereafter, on March 19, 2018, the parties informed the Court that that they would hold a formal mediation with Martin Scheinman, Esq. on May 7, 2018. (Dkt. No. 21).

In preparation for the mediation, Plaintiffs' counsel hired an expert company, BIA, which specializes in identifying, collecting, and analyzing data, to calculate the damages for Plaintiffs. An expert was needed because computing damages in this case presented several unique challenges as detailed below. BIA's assistance in synthesizing and analyzing the thousands of pages of documents produced by Defendant was instrumental in developing multiple models of potential damages for use at mediation. In addition, there were many variations in the data which Defendant had produced; accordingly, BIA was required to analyze Defendant's voluminous records to identify key patterns in the information in order to formulate extrapolations for the Plaintiffs' use at the upcoming mediation.[1]

On May 7, 2018, the parties held a formal mediation with Mr. Scheinman, on behalf of the two named Plaintiffs. After several hours of active deliberation and negotiation, the parties reached an agreement in principle which has now been memorialized in the Settlement Agreement attached hereto as Exhibit 1, subject to this Court's approval.

## THE SETTLEMENT AGREEMENT

The Settlement Agreement reached by the parties provides for Defendant to pay Plaintiffs an amount of seventy-five thousand dollars ($75,000.00) to resolve the case.

As per the terms of the Agreement, after attorneys' fees and expenses, Plaintiffs will receive $41,666.00 of the total settlement amount, which will be allocated as follows: Mr. Pusey will receive a settlement payment of thirty thousand dollars ($30,000.00) in one lump sum, divided into two payments. One payment of fifteen thousand dollars ($15,000.00) will be subject to regular

---

[1] Attached hereto as Exhibit 2 are two detailed invoices from BIA, which demonstrate that Plaintiffs' counsel and BIA worked closely together, over the course of several weeks, to develop damages models based on various criteria.

payroll withholdings, and the second payment of fifteen thousand dollars ($15,000.00) will be subject to Form 1099 tax reporting. See Exhibit 1 (¶ 2(a)).

Mr. Nick will receive a settlement payment of eleven thousand, six hundred and sixty-six dollars ($11,666.00) in one lump sum, divided into two payments. One payment of five thousand, eight hundred and thirty-three dollars ($5,833.00) will be subject to regular tax withholdings, and the second payment of five thousand, eight hundred and thirty-three dollars ($5,833.00) will be subject to Form 1099 tax reporting. See Exhibit 1 (¶ 2(a)).

In exchange for the settlement payments, Plaintiffs agreed to a release that only encompasses the wage and hour claims that they had, or may have had, against Defendant. Thus, the release given by Plaintiffs does not fall into the category of releases that are so broad and encompassing as to be rejected as unfair or unreasonable. See Flood v. Carlson Restaurants, Inc., 2015 WL 4111668, at * 2 (S.D.N.Y. Jul. 6, 2015). Additionally, Plaintiffs withdrew all their prevailing wage claims, with prejudice, on grounds that discovery revealed that those claims lacked merit. The Settlement Agreement also contains, *inter alia*, a mutual non-disparagement provision, with a carve out that will allow Plaintiffs to make truthful statements concerning their experience litigating this action. The Agreement also contains a neutral employment inquiry provision. See Exhibit 1 (¶¶ 6, 9, 11).

Plaintiffs acknowledge that Defendant continues to deny all of Plaintiffs' claims and that its agreement to settle this matter does not, in any way, constitute an admission that Plaintiffs' claims have merit.

## COSTS AND ATTORNEY'S FEES

The settlement agreement includes provisions for attorneys' fees in the amount of 33.3% of the settlement amount, a sum of twenty thousand, five hundred and twenty-three dollars and ten cents ($20,523.10) and litigation costs in the amount of twelve thousand, eight hundred and ten dollars and ninety cents ($12,810.90), which included the cost of the damages expert retained by Plaintiffs.[2,3] See Exhibit 1 (¶ 2(a)).

Since the filing of the case in July 2017, Plaintiffs' counsel has used its considerable expertise and experience in litigating wage and hour cases to obtain a very good result for the Plaintiffs. This case was particularly challenging to litigate as Defendant maintained a substantial number of records relating to time worked and wages paid. Additionally, although Plaintiffs' prevailing wage claims were ultimately withdrawn, as discovery revealed they were without merit, before Plaintiffs could make this determination, BIA's assistance was invaluable in assessing the potential viability of these claims. In so doing, BIA was required to analyze six years of prevailing

---

[2] A disbursement log showing the costs incurred in this case, which total $12,810.90, is attached hereto as Exhibit 3. Additionally, the corresponding invoices from BIA are attached hereto as Exhibit 2.

[3] This amount of attorneys' fees is eminently reasonable, particularly in light of the fact that, per the terms of the retainer agreement signed by Plaintiffs, attached hereto as Exhibit 4, Joseph & Norinsberg, LLC, would receive a 40% contingency fee of any settlement or verdict.

Hon. Gary R. Brown U.S.M.J,
June 8, 2018
Page 4

wage schedules that vary by year, by county, and by position.

Computing Plaintiffs' alleged damages for overtime hours (hours worked in excess of 40 per week) presented another difficulty. This is because Plaintiffs' total weekly hours include both public works jobs and private jobs; however, the overtime rate for public work projects versus private jobs is different. Additionally, the expert was required to compute alleged potential damages for alleged uncompensated time, such as work done during lunch hours and travel time between jobs. In sum, Plaintiffs' counsel spent considerable time working with BIA to prepare for the mediation, which was essential to enable the mediator to resolve the matter fairly and amicably.

Plaintiffs' counsel has worked without compensation of any kind to date, and our fee has been wholly contingent upon the result achieved. Under such circumstances, Courts routinely award attorneys' fees equaling one-third of the settlement amount. See Howard v. Don Coleman Advertising Inc., 2017 WL 773695, at *2 (S.D.N.Y., 2017) (Cott, J.) (approving attorneys' fees of one-third of the settlement amount, plus costs); Williams v. Magic Management, LLC, 2017 WL 4861990, at *3 (S.D.N.Y., 2017) (same); Rangel v. 639 Grand St. Meat & Produce Corp., No. 13 CV 3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sept 19, 2013) (approving attorneys' fees of one-third of FLSA settlement amount, plus costs, pursuant to plaintiffs' retainer agreement, and noting that such a fee arrangement "is routinely approved by courts in this Circuit").

For the purposes of this settlement only, Defendant takes no position with respect to the reasonableness of the request for an award of attorneys' fees and expenses.

## THE SETTLEMENT IS FAIR AND REASONABLE

The parties' agreement must be "fair and reasonable." Flores v. Food Express Rego Park, Inc., No. 15-CV-1410 (KAM)(SMG), 2016 WL 386042, at *1 (E.D.N.Y. Feb. 1, 2016) (citing Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012)). Generally, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." In re Penthouse Executive Club Compensation Litig., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether to approve a settlement agreement, the ultimate question is "whether the proposed settlement reflects a fair and reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." Wolinsky, 900 F. Supp. 2d at 335.

Here, there is no question that the Settlement Agreement did not come about because of "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations over the course of several months aided by extensive analysis of a voluminous number of records. The parties are represented by counsel highly experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. In fact, the parties settled this case only with the assistance of a highly experienced mediator. Thus, this settlement is utterly devoid of any fraud or collusion.

The proposed Settlement Agreement resolves *bona fide* disputes and reflects a reasonable compromise over sharply contested issues that led the parties to resolve this matter. Had the matter proceeded to summary judgment and/or trial, Defendant risked being exposed to greater damages, because, inter alia: (i) Defendant would have to face Plaintiffs' claims for alleged "off the clock" work; and (ii) Defendant risked the prospect of Plaintiffs moving forward with a motion for conditional certification of a collective action pursuant to 29 U.S.C. §216(b), as originally contemplated.

Plaintiffs, however, also faced considerable risks in proceeding forward with the litigation, as the Defendant's records could weaken, or potentially defeat, their claims. In addition, a jury could potentially discount Plaintiffs' reasonable recollections of their work hours. Furthermore, had the matter proceeded to summary judgment and/or trial, Plaintiffs would need to rely more heavily on the expert to compute alleged damages on a collective or class-wide basis, thus incurring further costs and expenses. On the other hand, even if Defendant ultimately defeated Plaintiffs' claims at trial or on summary judgment, the legal fees and expenses incurred by Defendant in doing so would have been substantial. Thus, for both parties, continuing through trial would be costly and would further defer closure in this litigation. Therefore, the settlement represents a reasonable compromise of the *bona fide* disputes in this matter. The settlement eliminates these risks and ensures that the Plaintiffs will almost immediately receive fair and reasonable compensation in this matter.

In sum, based on the litigation and collection risks discussed above, the settlement is advantageous to all parties and will enable the parties to avoid the burdens and expenses of ongoing litigation.

## CONCLUSION

For the reasons set forth above, the parties respectfully request that the Court approve the settlement as fair and reasonable. Additionally, the parties respectfully request that the executed voluntary dismissal appended as Exhibit A to the Settlement Agreement be So-Ordered by the Court. See Exhibit 1 (¶ 22).

We thank the Court for its consideration of this request.

Respectfully Submitted,

JOSEPH AND NORINSBERG, LLC

By: _____
Bennitta L. Joseph, Esq.
Chaya M. Gourarie, Esq.

HON. GARY R. BROWN U.S.M.J,
JUNE 8, 2018
PAGE 6

cc:     Ellen R. Storch, Esq.
        Aaron N. Solomon, Esq.
        Kaufman Dolowich Voluck
        135 Crossways Park Drive, Suite 201
        Woodbury, New York 11797
        estorch@kdvlaw.com
        asolomon@kdvlaw.com
        *Attorneys for Defendant*